UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CURTIS NEAL JONES                                                                                      PLAINTIFF

V.                                                                            CIVIL ACTION NO. 3:23-CV-23-HTW-ASH

O'NEAL HENDERSON II AND WESTERN FLYER                                                 DEFENDANTS
EXPRESS, LLC

ORDER

This personal-injury case is before the Court on a number of discovery motions: First, Defendants ask the Court to compel non-parties Ortho Sport & Spine Physicians of Mississippi, LLC [63] and Drayer Physical Therapy Institute, LLC d/b/a Elite Physical Therapy and Omni Healthcare Financial [88] to comply with subpoenas Defendants issued. Next, Omni moves to strike the motion to compel directed to the subpoena issued to it [91]. Omni also seeks to quash the subpoenas issued to it and Elite [94]. Finally, Defendants move to compel a new Rule 30(b)(6) deposition of Ortho Sport and for sanctions for Ortho Sport's failure to designate a properly prepared witness [97].

I.      Factual Background

Plaintiff Curtis Neal Jones alleges he was injured in a car accident caused by the negligence of Defendant O'Neal Henderson II, who was driving in the course and scope of his employment with Defendant Western Flyer Express, LLC, at the time of the accident. Following the accident, Jones received medical treatment at Ortho Sport, "a lien-based orthopedic clinic," and physical-therapy services at Elite. Defs. Mem. [64] at 2. Defendants contend that Jones incurred approximately $141,000 in medical expenses and that "[a]t least $11,026.75 of this amount is attributable to therapeutic and other treatments provided by Elite." Defs. Mem. [89] at 1. At some point, Omni purchased the unpaid account receivable from Jones's treatment at

Elite at a discount, a process known as "factoring." Omni says the medical factoring market is competitive and that its discounted purchase price is confidential. Omni claims a lien against any proceeds received by Jones for the full, undiscounted amount of Elite's unpaid receivable. Defendants do not dispute that Omni's claimed lien is for the undiscounted amount.

Defendants issued subpoenas to Ortho Sport, Elite, and Omni, and noticed the 30(b)(6) deposition of Ortho Sport. These discovery disputes followed.

II.     Analysis

    A.     Ortho Sport

        1.     Subpoena

Defendants served Ortho Sport's registered agent on July 10, 2023, with a subpoena seeking seven categories of documents and listing a compliance date of July 21, 2023. By August 11, 2023, Defendants had not yet received any responsive documents, so they sent Ortho Sport a good-faith letter, which was certified delivered on August 14, 2023.[1] On August 30, 2023, Defendants received two CDs from Ortho Sport, but they discovered the CDs were blank. Defendants notified Ortho Sport, which promised new copies would be sent immediately. As of September 11, 2023, Defendants had yet to receive any responsive documents from Ortho Sport, so they filed their motion to compel. The following week, Defendants received two CDs from Ortho Sport containing medical records and bills.

Ortho Sport filed its response to the motion to compel, arguing that Defendants' subpoena is overbroad and suggesting that it "should be permitted to formally respond to

---

[1] Ortho Sport's records custodian mailed "medical records, billing statements, and other documentation regarding [Jones's] treatment . . . at Ortho Sport" on July 27, 2023. Allen Aff. [70-1] ¶ 3. These items were either lost in the mail or were supposed to be on the two blank CDs Defendants received on August 30, 2023.

Defendants' subpoena" at some undefined future time "with proper objections." Ortho Sport Mem. [71] at 5. In their reply, Defendants "agree[d] to withdraw Subpoena Request Nos. 4, 6, and 7," leaving only Requests 1 through 3 and 5 before the Court. Defs. Reply [72] at 1. The Court will consider first whether Ortho Sport waived any objections to the subpoena before turning to the remaining requests.

        a.      Waiver

Under Federal Rule of Civil Procedure 45(d)(2)(B),

> A person commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection to inspecting [or] copying . . . any or all of the materials . . . or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.

"Lower courts in the Fifth Circuit have consistently held that, absent extension or good cause, failure to serve timely objections to a Rule 45 subpoena or to file a timely motion to quash generally results in a waiver of all grounds for objection." *Panini Am., Inc. v. Wild Card, Inc.*, No. 4:22-MC-205, 2023 WL 1073692, at *3 (E.D. Tex. Jan. 27, 2023) (collecting cases); *cf. Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573, 576 (5th Cir. 2016) (holding district court did not abuse discretion in finding personal-jurisdiction defense waived where non-party subpoena recipient did not object to subpoena under Rule 45(d)(2)(B)). But "a 'court retains discretion to decline to compel production of requested documents when the request exceeds the bounds of fair discovery, even if a timely objection has not been made.'" *Panini Am.*, 2023 WL 1073692, at *3 (quoting *Schooler v. Wal-Mart Stores, Inc.*, No. 14-2799, 2015 WL 4879434, at *1 (E.D. La. Aug. 14, 2015)). So regardless of whether Ortho Sport can be said to have waived any objections, the Court "will not force [Ortho Sport] to provide . . . documents to [Defendants that] exceed[] the boundaries of fair discovery." *Id.*

3

b.  Document Requests

Federal Rule of Civil Procedure 26 allows for broad discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). A discovery request seeks evidence that "is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). Finally, where a discovery dispute arises, the burden is "on the party resisting discovery to—in order to prevail on a motion for protective order or successfully resist a motion to compel—specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of proper discovery . . . or that a discovery request would impose an undue burden or expense or is otherwise objectionable." *Carr v. State farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. Dec. 7, 2015) (citing *McLeod, Alexander, Powell & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). With these legal parameters in mind, the Court turns to the disputed document requests.

*Request Nos. 1–3:* Defendants have shown that the information requested in Request Nos. 1–3 is within the scope of permissible discovery. *See, e.g.*, *Chauppette v. Northland Ins. Co.*, No. 08-4193, 2009 WL 3447291, at *1 (E.D. La. Oct. 21, 2009) (finding "that some information as to [physician's] financial interest, if any, arising from his relationships with plaintiff's counsel of record . . . together with some information concerning those relationships, if any, is relevant to his credibility as a witness"). Ortho Sport does not address these requests

4

individually and argues only that the subpoena, generally, "is overbroad on its face." Ortho Sport Mem. [71] at 3. But a party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *McLeod*, 894 F.2d at 1485. A general statement that a request is "overly broad, burdensome, oppressive[,] and irrelevant" is "not adequate to voice a successful objection." *Id.* (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). Because Ortho Sport never makes a sufficient objection to Request Nos. 1–3, Defendants' motion to compel is granted as to those requests. Ortho Sport is ordered to produce all responsive documents or certify all responsive documents have been produced by the deadline established in this Order.

*Request No. 5:* The final disputed request seeks "[c]omplete copies of any and all HIPAA-compliant documents depicting the number of patients referred to you by Deshun T. Martin and/or Vaterria M. Martin on behalf of Martin and Martin, PA during the last ten (10) years." Subpoena Ex. A [45-1] at 2. In reply, Defendants again limit the request temporally "to documents depicting referrals on or after April 25, 2022." Defs. Reply [72] at 6 n.3. Ortho Sport's response does address this request; Ortho Sport argues that the request is "overbroad" and seeks "documents without regard to the [a]ffected patients' privacy rights under HIPAA." Ortho Sport Mem. [71] at 4. Starting with the latter argument, Defendants "are not asking for the identifying information of patients in unrelated matters; rather, they are simply asking for document(s) evidencing the number of patients referred to Ortho Sport by Plaintiff's counsel since April 25, 2022." Defs. Reply [72] at 9. The Court agrees with Defendants that this can be done through redactions. And Ortho Sport has not rebutted Defendants' argument that evidence of the existence of other patient referrals (but not the identity of those other patients) from Jones's counsel to Ortho Sport may be relevant to the bias of any Ortho Sport witness. The

motion to compel is therefore granted as to Request No. 5.[2] In the interest of avoiding possible confusion over what Defendants mean by "HIPAA-compliant documents," the Court clarifies that this Order does not require the disclosure of any patient names, but only the production of "document(s) evidencing the number of patients referred to Ortho Sport by Plaintiff's counsel since April 25, 2022." Defs. Reply [72] at 9.

        2.      Rule 30(b)(6) deposition

United States Magistrate Judge F. Keith Ball held multiple discovery conferences with counsel for Defendants and Ortho Sport to address their disputes related to the subpoena. As a result of those conferences, Defendants claim they "came to believe that a deposition of Ortho Sport pursuant to Federal Rule of Civil Procedure 30(b)(6) might be the best avenue to gain insight on any outstanding responsive information or document." Defs. Mem. [98] at 2. Defendants and Ortho Sport then exchanged revisions on a draft Rule 30(b)(6) notice, and they settled on ten topics. Defendants noticed the deposition for those ten topics, and the deposition took place on December 13, 2023, in Atlanta, Georgia.

Ortho Sport did not "designate one or more officers, directors, or managing agents" to testify as to the noticed topics. Fed. R. Civ. P. 30(b)(6). Instead, it designated John Hillis, an Atlanta based workers compensation attorney with no formal relationship to Ortho Sport, as an "other person[] who consent[ed] to testify on its behalf." *Id.* Defendants say Hillis was not sufficiently prepared to answer on behalf of Ortho Sport as to eight of the noticed topics, and

---

[2] In its response to Defendants' motion regarding its Rule 30(b)(6) designee, Ortho Sport says "there is no central database or record kept of all patients represented by a particular lawyer" so it will have to review all of its' patients files to identify and produce responsive redacted documents. Ortho Sport Mem. [106] at 3. But the discovery request is within the permissible scope of discovery, and Ortho Sport has never argued that such an endeavor would involve "significant expense" or subject it to "undue burden." Fed. R. Civ. P. 45(d)(2)(B)(ii), (d)(3)(A)(iv).

6

they ask the Court to compel Ortho Sport to produce one or more Rule 30(b)(6) deponents who can speak to the topics. The Court will address the topics Defendants complain about in turn.

**Topic No. 1:** Defendants asked for a designee to testify regarding "[a]ll bills and the basis of the charges issued to Curtis Neal Jones or his counsel by Ortho Sport . . . and its affiliates." Am. Notice [86] at 1. Defendants complain that Hillis (1) could not explain "[w]hat guidelines, whether internal or external, [Ortho Sport] follow[s] regarding billing on specific procedures in the state of Mississippi," Hillis Tr. [97-1] at 46, (2) could not "give . . . an exhaustive list of everything that goes into [the] determination" of how Ortho Sport determines billing rates, *id.* at 48, (3) was not aware of Ortho Sport's policy on issuing bills to patients, *id.* at 93–94, 140, and (4) did not know how physician travel factored into Ortho Sport's bills, *id.* at 129.[3]

Ortho Sport responds that Defendants "know the identity of Faith Belzhoover, an Ortho Sport employee involved in billing and record keeping," and if they "wanted minutiae-level detail on billing, they could easily have deposed" her. Ortho Sport Mem. [106] at 4. But this response misapprehends Ortho Sport's responsibility under Rule 30(b)(6); Ortho Sport was required to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [Defendants] and to *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997)) (emphasis in *Brazos River*). Ortho Sport also notes that Defendants have Jones's bills "and the agreement between Ortho Sport and [Jones] which details the arrangement between the parties with respect to Ortho Sport's charges." Ortho Sport Mem. [106] at 5. Maybe so, but Ortho Sport

---

[3] All pinpoint citations are to the deposition page numbers rather than the CM/ECF pagination.

did not object to producing a witness to testify regarding "[a]ll bills and the basis of the charges issued to" Jones. Am. Notice [86] at 1. Because "it bec[a]me[] obvious that [Hillis was] deficient, [Ortho Sport] is obligated to provide a substitute" designee as to Topic No. 1. *Brazos River*, 469 F.3d at 433.

*Topic No. 2:* Defendants sought testimony from Ortho Sport on its "record-keeping protocols, specifically including its use of eClinicalWorks." Am. Notice [86] at 2. They say Hillis "generally lacked knowledge and was not prepared to testify regarding a number of Ortho Sport's record-keeping protocols." Defs. Mem. [98] at 7. Ortho Sport offers no defense of Hillis's ability to testify as to it record-keeping protocols, and the excerpts highlighted by Defendants demonstrate that he was insufficiently prepared. Ortho Sport is ordered to provide a substitute designee as to Topic No. 2.

*Topic Nos. 4, 6, and 7:* Defendants lump these three topics together. They requested testimony regarding communications between Ortho Sport and its affiliates, employees, and medical providers on the one hand and Jones, his attorneys, and their staff on the other hand; liens, contracts, assignments, or other agreements covering the relationship between Jones and Ortho Sport; and Ortho Sport's reporting requirements for attorneys of represented patients. *See* Am. Notice [86] at 2. Defendants explain that one purpose of these topics "was to shine light on contacts and correspondence between claims managers (either external or internal), Ortho Sport, Plaintiff, and/or Plaintiff's counsel." Defs. Mem. [98] at 7. Hillis testified he was not aware whether a case management company was involved in Jones's treatment with Ortho Sport but that he knew Ortho Sport has "asked [its] vendors if they have any information about Mr. Jones, specifically" and received "notes back from those vendors." Hillis Tr. [97-1] at 73. Based on Defendants' argument and cited testimony, the Court is not convinced that Ortho Sport's

designee was unprepared to address these topics. At this point, the Court has ordered Ortho Sport to produce all relevant documents, so regardless of whether Hillis was appropriately prepared to testify on these topics, the documents will speak for themselves. In light of this, and the fact that Ortho Sport is a non-party, the Court will not order Ortho Sport to produce a substitute designee on Topic Nos. 4, 6, and 7.

*Topic No. 8:* Defendants asked for a corporate representative to testify as to Ortho Sport and its affiliates' "prior or ongoing relationship with . . . Jones and/or his attorneys, including staff." Am. Notice [86] at 2. Defendants want to know "the number of patients represented by Plaintiff's counsel who have treated or are currently treating with Ortho Sport." Defs. Mem. [98] at 8. Ortho Sport argues that Hillis's testimony that he was "not aware of" the information Defendants sought should be construed as Ortho Sport lacking the information and not Hillis lacking preparation. Ortho Sport Mem. [106] at 4. Hillis's testimony is at best ambiguous on this point. If he intended to testify that Ortho Sport conducted a reasonable inquiry and does not possess information to answer Defendants' questions, that is not evident from Hillis's response. His response could be interpreted to mean Hillis personally did not know the answer because he was unprepared. The Court has compelled Ortho Sport to provide documents that touch on this topic, so there may be no need for additional questioning. Nonetheless, the Court finds that Hillis was insufficiently prepared and Ortho Sport is ordered to provide a substitute designee as to Topic No. 8.

*Topic No. 9:* This topic concerns Ortho Sport's "marketing efforts" aimed at "obtain[ing] patient referrals from attorneys or other entities for patients with potential or pending personal injury claims [or] workers compensation claims." Am. Notice [86] at 2. Defendants complain that Hillis did not know the details of any marketing campaigns in Mississippi. But he did testify

that Ortho Sport "ha[s] marketed in the same way in Mississippi that [it] do[es] everywhere": using "billboards and ads." Hillis Tr. [97-1] at 116. And when asked whether Ortho Sport "direct[s] any of its advertising towards plaintiff-specific bars or anything like that," Hillis responded: "No, we don't direct any advertising towards specific groups of plaintiff bars." *Id.* at 117. Defendants do not identify any more specific questions relative to marketing campaigns aimed at obtaining referrals for personal-injury clients that Hillis was unable to answer. The Court denies the motion as to this topic.

      ***Topic No. 10:*** The final disputed topic sought testimony regarding "staffing decisions for the personnel that provided treatment to . . . Jones . . . including . . . the vetting of physicians, physicians' assistants, [and] nurse practitioners that treated . . . Jones and the determination as to which personnel would provide treatment to . . . Jones." Am. Notice [86] at 2. Defendants complain that Hillis did not know "what imagery capabilities the Mississippi clinic has; the hours of operation; the number of staff members; the types of staff members; whether any physicians who work at the clinic are based out of Mississippi; the physicians performing procedures who are not based out of Mississippi; and whether the Mississippi clinic is an orthopedic surgery or an MRI facility." Defs. Mem. [98] at 11 (citations omitted). But those details are not encompassed within Topic No. 10's staffing-decision ambit. Similarly, Defendants asked Hillis about employee training, but Defendants have failed to demonstrate that training is synonymous with vetting.

      Hillis was, however, asked questions that fall under Topic No. 10 that he could not fully answer. For example, he was asked why a particular physician—Dr. Lee—gave Jones steroid injections. Hillis said that "a variety of factors . . . go into . . . what doctors . . . go out to do what services and everything. Their availability, specialty . . . . [But t]he specific factors that were

involved in . . . Dr. Lee traveling to [provide Jones steroid injections,] I don't know those specific factors." Hillis Tr. [97-1] at 132. Hillis gave a similar answer when questioned about why Dr. Kum-Nji gave Jones some of his later steroid injections. *Id.* at 133–34. Hillis was technically not adequately prepared to answer the questions posed to him under Topic No. 10. That said, how Ortho Sport chose which provider would provide treatment to Jones is of tangential, if any, relevance to the claims and defenses at issue in this case. So the Court will not require Ortho Sport to designate a substitute witness on Topic No. 10.

**Privilege Issue:** Defendants argue that Ortho Sport's counsel improperly objected to questions about what facts Hillis learned from counsel as opposed to some other source. Ortho Sport contends that while Defendants are entitled to learn the facts from Hillis even if those facts originate from counsel, asking Hillis to itemize which ones came from counsel invades the attorney-client privilege. The only decision Defendants cite that is directly on point is *Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2015 WL 11120526, at *6 (N.D. Tex. July 15, 2015).[4] The applicability of *Orchestratehr* to this case is unclear because that court was applying Texas attorney-client privilege law. Defendants fail to demonstrate why that decision is instructive as to the Mississippi attorney-client privilege law the Court would apply in this diversity action.

In any event, the Court denies Defendants' motion based on the record before it. First, there is some confusion over what was stated during the deposition due to apparent errors in the transcript submitted by Defendants. Additionally, it is unclear whether the dispute is ripe for adjudication. Ortho Sport points out that it never instructed the witness not to answer, and

---

[4] Defendants' other cited cases address whether the underlying facts are discoverable when the deponent learns of them from counsel. That question, while closely related, is not what is at issue here.

11

Defendants argue this is a hyper-technical position the Court should ignore. The briefing is no help to the Court in resolving the issue. Rule 30(c)(2) states "[a]n objection at the time of the examination . . . must be noted on the record, but that the examination still proceeds; the testimony is taken subject to any objection." That rule also states that "[a] person may instruction a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). The plain text of Rule 30(c)(2) indicates that instructing a witness not to answer is an exception (and a limited one) to the ordinary expectation that "the examination still proceeds" in response to the objection. The Court, however, need not determine at this time whether instructing a witness not to answer is a prerequisite to Defendants' motion because it is unclear from this record whether (as Defendants claim) that was the practical effect of Ortho Sport's objection. Finally, the Court does not find that Ortho Sport's objections warrant a sanction under Rule 30(d)(2) for "a person who impedes, delays, or frustrates the fair examination of the deponent."

In sum, Defendants' motion to compel is granted in part and Ortho Sport shall designate a substitute witness for a second Rule 30(b)(6) deposition as to Topic Nos. 1, 2, and 8. To avoid further expense, the Court suggests the parties consider conducting the limited follow-up deposition remotely. Finally, the Court declines to award Defendants' requested sanctions.

    B.    Elite and Omni

Defendants served Elite and Omni with subpoenas in July 2023 seeking documents and moved to compel compliance with those subpoenas in December 2023. Omni moved both to strike as untimely and to quash the subpoenas. The Court will first address whether Defendants' motion was timely filed before addressing the disputed discovery requests.

1.      Omni's Motion to Strike

Omni says Defendants' motion was not timely filed under Local Rule 7(b)(2)(C). That rule provides: "A party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court[,] and time to effectuate the court's order before the discovery deadline." L.U. Civ. R. 7(b)(2)(C). At the time Defendants filed their motion on December 14, 2023, the discovery deadline was January 16, 2024—just 33 days later. Omni is right that, with response (December 28, 2023) and reply (January 4, 2024) deadlines factored in, assuming the Court could have ruled on the motion within a week of it being fully briefed (January 11, 2024), that would have given Omni just five days—including an intervening weekend—to comply with the Court's order by the discovery deadline. But on December 27, 2023, pursuant to Defendants' unopposed motion, the discovery deadline was extended to March 1, 2024.[5] While it is true that if Defendants had moved to compel sooner after serving their subpoena the schedule would be less compressed, the Court does not find under these circumstances that the motion was untimely.

2.      Discovery Dispute

At issue are Request No. 4 in the Elite subpoena and Request Nos. 1, 2, and 6 in the Omni subpoena. Request No. 4 in the Elite subpoena asks Elite to produce "copies of any and all correspondence, contracts, agreements, itemized statements, and bills with Omni Healthcare relating to . . . Jones'[s] medical treatment." Elite Subpoena Ex. A [47-1] at 2. The disputed requests to Omni seek:

> 1. A complete **certified** copy of your complete file pertaining to [Jones], including but not limited to, any and all documents, images, photographs,

---

[5] As indicated herein, the Court finds additional discovery is required to comply with this Order and will extend discovery as set forth at the end of this Order.

13

>contracts, agreements, internal memos, evaluations, medical reports, analysis, emails, invoices, itemized statements, and bills.
>
>2. Complete copies of documents, correspondence (including email communications and text messages), contracts, evaluations, case assessments, fee arrangements and all agreements with [Jones's counsel] relating to . . . Jones.
>
>. . . .
>
>6. Complete copies of any and all correspondence (including email communications and text messages), contracts, evaluations, case assessments, fee arrangements and all agreements, itemized statements, invoices and bills to or from Elite Physical Therapy which relate in any way to the treatment provided to . . . Jones.

Omni Subpoena Ex. A [44-1] at 1–2. According to Omni, Elite produced Jones's medical records and notes and calls between Elite and Omni, while both Omni and Elite produced letters of protection and medical bills. So Omni describes the universe of documents that have not been produced by it or Elite as the price Omni paid to purchase Jones's account from Elite; any communications between Omni and Jones or his counsel; and any other document in Omni's possession that references Jones. Omni Mem. [95] at 5.

Defendants say items responsive to the objected-to requests "are relevant because they bear on the issues of bias, credibility, causation, and the reasonableness and necessity of the treatment provided." Defs. Mem. [89] at 6. They rely on essentially the same reasons they argued Ortho Sport's relationship with Jones's attorneys was discoverable. *See id.* (citing *ML Healthcare Servs. LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1302 (11th Cir. 2018) (describing relationship between entity that "matches injured, uninsured plaintiffs who have viable tort claims with treating doctors" and "then purchases at a discounted rate the medical bills these doctors generate" and concluding district court did not abuse discretion in "permitting evidence of [entity's] payment arrangement to be admitted for the limited purpose of showing bias on the part of the doctors who testified in th[e] case")). But the relationship between Jones

and his attorneys and Omni seems more attenuated than that between Ortho Sport and Jones's attorneys. That said, there exists *some* relationship between Omni and Jones's attorneys, and evidence of that relationship is discoverable. Omni is ordered to produce to Defendants copies of all correspondence and agreements with Jones's counsel that relate to Jones.[6]

As for the price Omni paid to purchase Elite's receivables, Omni has established that the information sought is "confidential . . . commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i); *see, e.g.*, Lang Aff. [94-1] at ¶ 10. According to the advisory committee notes to Federal Rule of Civil Procedure 45, a subpoena seeking such information "should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the witness." Fed. R. Civ. P. 45, advisory committee notes to 1991 amendment.

Defendants argue principally that discovery of the discounted amount is necessary to address possible bias and for leverage in settlement.[7] Defs. Mem. [89] at 6; Defs. Reply [100] at 7. At least one court has credited the law favoring settlements as a basis to compel disclosure, but that case involved a far greater amount in controversy that impacts the proportionality analysis. *See McClain v. Sysco New Orleans*, No. CV 19-1801, 2020 WL 11028497, at *13 (E.D.

---

[6] Omni objects to producing relevant correspondence because any such correspondence "[c]an be obtained from a Party to this action and that burden should not be placed on a third party." Omni Mem. [95] at 5. It cites no authority for this objection. The Court orders Omni to produce responsive documents in its possession to the extent it has not already done so.

[7] Defendants also suggest the undiscounted amount may be relevant to the reasonableness of Elite's charges, but Defendants fail to respond directly to Omni's argument that this would violate the collateral source rule. Omni Reply [95] at 11. Even so, the Court would still find that under the fact-specific circumstances of this case, Defendants have failed to demonstrate a substantial need for disclosure of Omni's confidential pricing information.

La. July 17, 2020) (compelling disclosure of discounted purchase amount for the plaintiff's $286,000 in medical bills).

As to bias, the Court finds persuasive here the reasoning in *In re Medport LA, LLC*:

> [T]he amount [the factoring company] paid for these services is not what will allow Movants to adduce evidence of bias. Rather, it is the relationship and course of dealing that may allow Movants to make that argument to the jury. As a result, while evidence of bias is relevant, the documents showing the amount paid for the medical services are not relevant, as they do not establish bias.

No. 2:20-cv-552-JAD-BNW, 2020 WL 3621343, at *4 (D. Nev. July 1, 2020). That is not to say that the amount paid by a medical factoring company will *never* be relevant to bias. *See Barnes v. Dolgencorp, LLC*, No. 22-2179, 2023 WL 7403450, at *1, 5–6 (E.D. La. Nov. 9, 2023) (compelling disclosure, subject to protective order, of discounted amount paid by factoring company based on the totality of case-specific facts, including an amount in controversy exceeding $355,000 and factoring agreement with the plaintiff's primary healthcare providers). But based on the record—including Elite's relatively lower amount in controversy and role in Jones's care (providing physical therapy pursuant to Ortho Sport's prescription)—and weighed in proportion to the needs of the case, Defendants have not shown a substantial need for the *discounted* purchase price paid by Omni where its lien is for the *undiscounted* amount. The subpoena is quashed to the extent that pricing details need not be produced. But as to the broader content of any agreements between Omni and Elite (or Omni and Jones or his counsel) related to the purchase of Jones's account, Omni has not established a confidentiality interest precluding

16

production. Omni is ordered to produce copies of any such agreements with the pricing terms redacted.[8]

To the extent Omni in good faith deems its agreements (or portions thereof) confidential even with the pricing information redacted, it may designate documents confidential in accordance with the Agreed Protective Order, Paragraph 1 of which is hereby amended to also apply to discovery materials produced by a third party pursuant to subpoena.

III.     Limited Extension of Discovery

Considering the Court's ruling and the additional discovery required for complying, a limited extension of discovery is in order. Some of the reasons raised by Defendants in their Motion to Amend Case Management Order [124] for extending discovery perhaps should have been raised sooner. Nonetheless, the Court finds it impractical to reopen discovery for a limited scope, and finds it is more equitable to reopen discovery generally for all parties, but only for a limited period of time.

As to the Court's ruling, Ortho Sport, Omni, and Elite are ordered to produce the documents set forth in this Order by April 15, 2024. Ortho Sport shall make available one or more designees reasonably prepared to testify on the topics identified in this Order by April 29, 2024.[9] The parties are directed to promptly schedule that redeposition to minimize the possibility of scheduling conflicts. The discovery deadline is hereby extended to May 10, 2024.

---

[8] Omni also objected to Request No. 1 to the extent it would require production of any documents "that may refer to Jones as one among many individuals involved in Omni's business activities but which includes no substantive information about[] Jones'[s] healthcare or any other issues involved in the Lawsuit." Omni Objs. [88-6] at 2. Defendants have "happily agree[d] not to pursue those documents." Defs. Mem. [89] at 13. Omni is ordered to produced materials responsive to Request No. 1 subject to this limitation.

[9] Subject to agreement by the parties' counsel and Ortho Sport's counsel, the deposition may occur on a later date within the discovery period.

IV. Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons,

- Defendants' motion to compel compliance with the subpoena issued to Ortho Sport [63] is granted as to Requests 1 through 3 and 5; it is withdrawn as to Requests 4, 6, and 7. By April 15, 2024, Ortho Sport shall produce responsive documents and supplement its response to those requests, stating that those documents have been produced as required by this Order.

- Defendants' motion to compel a new Rule 30(b)(6) deposition [97] is granted in part as to Topic Nos. 1, 2, and 8, but otherwise denied. The redeposition should take place by April 29, 2024.

- Omni's motion to strike Defendants' motion to compel [91] is denied.

- Defendants' motion to compel compliance with Elite and Omni subpoenas [88] is granted in part and denied in part as stated herein. By April 15, 2024, Elite and Omni shall produce responsive documents and supplement their responses to the requests, stating that documents have been produced as required by this Order.

- Omni's motion to quash those subpoenas [94] is granted in part as to pricing information but otherwise denied.

- The discovery deadline is hereby extended to May 10, 2024.

**SO ORDERED AND ADJUDGED** this the 19th day of March, 2024.

s/ *Andrew S. Harris*<br>UNITED STATES MAGISTRATE JUDGE